**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| THE NEW GEORGIA PROJECT, BLACK VOTERS MATTER FUND, and RISE, INC., <br><br>             Plaintiffs, <br><br>    v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State; REBECCA SULLIVAN, in her official capacity as the Vice Chair of the Georgia State Election Board; DAVID WORLEY, in his official capacity as a member of the Georgia State Election Board; MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board; and ANH LE, in her official capacity as a member of the Georgia State Election Board, <br><br>             Defendants. | Civil Action No. <br><br> 1:21-cv-01229-JPB |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO REPUBLICAN**
**COMMITTEES' MOTION TO INTERVENE AS DEFENDANTS**

**INTRODUCTION**

To date, 18 different plaintiffs—nearly all non-profit organizations—have

filed a total of five lawsuits challenging various aspects of SB 202 (the "Voter

Suppression Bill"). These lawsuits collectively name 89 different government actors as defendants, all of whom are required to enforce the statute at issue. Adding four *new* defendants to "preserve" the challenged law—as Proposed Intervenor-Defendants Republican National Committee, National Republican Senatorial Committee, National Republican Campaign Committee, and Georgia Republican Party, Inc. (collectively, the "Republican Committees") would have the Court do—will only mean significantly more filings, more discovery, and more time spent in hearings, conferences, and trial. And it would add these complexities despite the Republican Committees' failure to identify any particular interest in this litigation beyond their generalized desire to weigh in on election rules. They also fail to show how any of the generic interests they *do* identify would be impaired if Plaintiffs The New Georgia Project, Black Voters Matter Fund, and Rise, Inc. (collectively, "Plaintiffs") prevail. And they fail to show that the existing Defendants will inadequately represent their claimed interest of "preserv[ing]" the Voter Suppression Bill as is required to establish intervention as of right under Federal Rule of Civil Procedure 24(a)(2). ECF No. 6-1 at 10.

The existing Defendants are state actors charged with defending Georgia's election laws, and they have consistently zealously discharged that duty in prior cases. There is no reason to believe that the Republican Committees would bring

anything further to the litigation, other than to needlessly multiply these proceedings, burdening the Plaintiffs and this Court. The more is not the merrier in this situation. To the contrary, under these circumstances, the Federal Rules disfavor intervention, both as of right and permissively. The Republican Committees' motion should be denied. If they wish to participate, an amicus brief is the appropriate vehicle to offer their perspectives.

## BACKGROUND

Plaintiffs The New Georgia Project, Black Voters Matter Fund, and Rise, Inc. are nonprofit organizations that seek to help citizens of color and young people vote in Georgia. They challenge several provisions of Georgia's omnibus Voter Suppression Bill that individually and collectively burden the right to vote and discriminate against Georgia's Black voters, including among Plaintiffs' members.

The Voter Suppression Bill is the product of a rushed legislative process that began immediately after Georgia's runoff election in January 2021, when Georgia voters elected two Democrats to the U.S. Senate, including the state's first Black U.S. Senator. The runoff election, like the general election in November 2020, had no fraud or irregularities and was marked by record high voter turnout—particularly among communities of color.

The Georgia Legislature responded by enacting a mammoth 98-page bill that deliberately and significantly restricts access to the polls, especially for Georgia's minority, young, poor, and disabled citizens. Among other restrictions, the Voter Suppression Bill imposes unnecessary and burdensome new identification requirements for absentee voting; unduly restricts the use of absentee drop boxes; bans mobile polling places; prohibits the State from distributing unsolicited absentee ballot applications; prohibits third-parties—including voter engagement organizations—from collecting absentee ballot applications; burdens voters with the risk of disenfranchisement due to meritless challenges that require an immediate defense of their qualifications; invalidates ballots cast by lawful voters before 5:00 p.m. in a precinct other than the one to which they were assigned, regardless of the reason or their ability to travel to another location (or wait until after 5:00 p.m.) to cast their ballot; bans any non-poll worker from giving food or drink, including water, to voters waiting in line; and compresses the time period for voting in runoff elections.

Plaintiffs filed this lawsuit on March 25, 2021 to challenge these provisions just hours after Georgia Governor Brian Kemp signed the Voter Suppression Bill into law. Plaintiffs allege that the provisions cited above, individually and collectively, create an undue burden on the right to vote in violation of the First and

Fourteenth Amendments to the U.S. Constitution. Plaintiffs also allege that SB 202 violates Section 2 of the federal Voting Rights Act, 52 U.S.C. § 10301, which prohibits the use of voting laws, policies, or practices that deny, abridge, or otherwise limit Black voters' access or increase the burden for Black people to exercise the right to vote.

Six days after Plaintiffs filed their complaint, the Republican Committees filed a motion to intervene with the stated goal of "preserv[ing]" the Voter Suppression Bill. ECF No. 6-1 at 10. For the following reasons, that motion should be denied.

## LEGAL STANDARD

A non-party seeking to intervene as of right bears the burden of satisfying four required elements: (1) their application must be timely; (2) they must have an "interest relating to the property or transaction which is the subject of the action"; (3) they must be "so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest"; and (4) their interests must be "represented inadequately by the existing parties to the suit." *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004) (quoting *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 593 (11th Cir. 1991)); *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989); *United States v. City of Miami*, 278 F.3d 1174,

1178 (11th Cir. 2002). Failing to establish even one of the necessary requirements is fatal to a motion to intervene as of right.

While courts have discretion to grant or deny motions for permissive intervention, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). Even if a movant's intervention is timely and shares a claim or defense in common with the main action, requirements under Rule 24(b)(2), the Court nonetheless "has the discretion to deny intervention," *Chiles*, 865 F.2d at 1213, and may consider "almost any factor rationally relevant,'" *Bake House SB, LLC v. City of Miami Beach*, No. 17-20217-CV-LENARD/GOODMAN, 2017 WL 2645760, at *6 (S.D. Fla. June 20, 2017) (citation omitted). These factors include "'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (citation omitted). The movant "must demonstrate an actual claim or defense—more than a general interest in the subject matter of the litigation—before permissive intervention is allowed." *First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*, NO. 1:11-CV-2087-ODE, 2011 WL 13221046, at *3 (N.D. Ga. Nov. 1, 2011).

## ARGUMENT

I.   **The Republican Committees are not entitled to intervene as of right.**

The Republican Committees' motion fails to satisfy three of the required elements for intervention as of right. As Plaintiffs explain below, the Republican Committees have not identified any legally-protectable interests warranting intervention; the generic interests they do advance will not be impeded or impaired in this case; and, in any event, their asserted interests are adequately represented by Defendants who already have a duty to "preserve" Georgia election law. ECF No. 6-1 at 9. For each of these reasons, the Court should deny the Republican Committees' motion to intervene as of right.

### A. The Republican Committees fail to identify a legally-protectable interest that entitles them to intervention.

The Republican Committees advance a scattershot list of generic interests but none entitle them to participate as a party in this case. Intervention as of right is "obviously meant" to encompass only "significantly protectable interest[s]." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The Eleventh Circuit has likewise recognized that an interest warranting intervention must be "direct, substantial, [and] legally protectable." *Huff v. IRS Comm'r*, 743 F.3d 790, 796 (11th Cir. 2014) (quotation omitted). "What is required is that the interest be one which

the *substantive* law recognizes as belonging to or being owned by the applicant." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991).

The Republican Committees' stated desire to ensure "fair and reliable" elections, to preserve "the integrity of the election process," or to promote "orderly administration" of elections fall well short of the direct and substantial interests required to intervene as of right. ECF No. 6-1 at 6 (cleaned up). These kinds of generalized interests in fair and reliable elections are shared by *all* Georgians, including the Secretary of State and the members of the State Election Board who are already defending these laws, as well as the Plaintiffs who brought this case and the four related cases challenging the Voter Suppression Bill. Asserting interests shared by all citizens is insufficient to establish intervention as of right. *Athens Lumber Co., Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (finding movant asserting interests "shared with . . . all citizens" is "so generalized it will not support a claim for intervention of right").

That the Republican Committees' candidates will "actively seek election or reelection in contests governed by the challenged rules" is likewise unpersuasive. ECF No. 6-1 at 6. Under this theory of intervention, *any* organization in Georgia— or any citizen of Georgia, for that matter—with *any* interest in electing a partisan candidate would be entitled to intervene as of right in *any* lawsuit so long as the case

involves an election law. This limitless interpretation of interests requiring intervention would render Rule 24(a)'s requirements meaningless.

The Republican Committees also advance an interest in "demanding adherence" to the newly-enacted laws—regardless of whether the Voter Suppression Bill violates the rights of Plaintiffs and their members. *Id.* For this proposition, the Republican Committees cite *Shays v. Fed. Election Comm'n*, 414 F.3d 76 (D.C. Cir. 2005), which did not address intervention at all. Instead, the court held that two congressional candidates had standing to challenge Federal Election Commission rules interpreting a campaign finance law they had sponsored because the rules allegedly would permit their campaign opponents to violate the duly enacted law. *See id.* at 84.

The context here is distinct several times over. First, the Republican Committees are not suing as plaintiffs; they are seeking to intervene as defendants. The distinction is critical because, while intervenor-plaintiffs in such circumstances seek to *challenge* the legality of a rule, intervenor-defendants merely seek to stand in the government's shoes by *defending* a rule, which they lack standing to do. Second, they cannot argue that an adverse ruling would subject them to an "illegally structure[ed] competitive environment"—the crux of the argument in *Shays*. *Id.* at 87. Plaintiffs' success would merely restore practices from recent elections that no

one suggests were in violation of federal law. And third, they have not identified their actual interest in "adherence" to the Voter Suppression Bill. If overturning the bans on outdoor drop boxes, mobile polling units, food and water distributions for voters waiting in line, and the other challenged provisions would competitively disadvantage the Republican Committees, it would do so only by removing barriers that, if left to stand, will make it harder for lawful Georgia voters, particularly racial minorities and young people, to participate in the state's elections. Maintaining those barriers and suppressing these voters is not the sort of legally protectable interest that gives rise to intervention as of right under Rule 24(a). *See Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) (concluding that alleged interest in perpetuating "unconstitutional conditions" not "legally protected interest" that can support intervention).

Finally, as for the Republican Committees' unsupported argument that they have a "distinct" interest in "conserving their resources," ECF No. 6-1 at 2, the Eleventh Circuit has made "plain that something more than an economic interest" is necessary for intervention as a matter of right, *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1251 (11th Cir. 2002). Asserting only an unexplained interest in saving money, *see infra* at 11, and generic interests that are quite literally held by

any Georgia voter, the Republican Committees fail to identify a direct, substantial, and legally protectable interest sufficient to support intervention as of right.

### B. The Republican Committees' generic interests will not be impeded or impaired absent intervention.

While the Republican Committees assert only generalized interests in a functioning electoral process (which are insufficient to support intervention as of right), they also fail to articulate how a ruling in Plaintiffs' favor will impede those interests. Instead, the Republican Committees advance two speculative theories of impairment: They claim they will "suffer" because an adverse decision will "undercut democratically enacted laws," ECF No. 6-1 at 6–7 (cleaned up), and they hypothesize that a ruling in Plaintiffs' favor might require them to spend "substantial resources" to educate their voters on any changes to Georgia's election laws. *Id.* at 7.

These supposed impairments are far too generalized and speculative to demonstrate "*practical* impairment" entitling the Republican Committees to intervene. *Stone*, 371 F.3d at 1310 (emphasis added); *see also United States v. City of Jackson*, 519 F.2d 1147, 1153 (5th Cir. 1975) (explaining how the interests that "must be impaired or impeded" must be "the substantive one" proposed intervenors assert); *Johnson v. Mortham*, 915 F. Supp. 1529, 1538 (N.D. Fla. 1995) (denying

intervention when movants had "no more than a generalized interest" in the case and the alleged impairment of their interest was "no more than speculative").

Plaintiffs are challenging newly-enacted voting restrictions that inflict burdens on voters and discriminate against Black voters. The Republican Committees do not explain how enjoining these *new*, burdensome, and discriminatory laws will cause "inevitable confusion" or "undermine confidence in the electoral process." ECF No. 6-1 at 7. If anything, it is the Voter Suppression Bill and its new slate of provisions that create confusion as Georgians attempt to navigate the sea change in voting restrictions, which the Republican Committees, for reasons they have not adequately explained, seek to preserve and demand adherence to. In short, the Republican Committees' generalized speculation is not enough to show a "practical disadvantage which warrants intervention of right." *Chiles*, 865 F.2d at 1214.

### C. The existing parties more than adequately represent the Republican Committees' interests.

Adequate representation by the existing parties to the suit is presumed when an existing party seeks the same objectives as the proposed intervenors. *Stone*, 371 F.3d at 1311 (citing *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999)). To overcome the presumption, the Republican Committees must "present some evidence to the contrary." *Stone*, 371 F.3d at 1311; *see also Clark*, 168 F.3d at 461.

Even if they do, a court will then "return[] to the general rule that adequate representation exists '[1] if no collusion is shown between the representative and an opposing party, [2] if the representative does not have or represent an interest adverse to the proposed intervener, and [3] if the representative does not fail in fulfillment of his duty.'" *Stone*, 371 F.3d at 1311 (quoting *Clark*, 168 F.3d at 461).

That the existing Defendants share the exact same goal as the Republican Committees—to defend the Voter Suppression Bill—is yet another reason to deny their motion to intervene. The Eleventh Circuit presumes that a proposed intervenor's interest is adequately represented when, as here, "an existing party pursues the same ultimate objective as the party seeking intervention." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993). And when the existing parties are government entities, the Eleventh Circuit presumes "that the government entity adequately represents the public, and . . . require[s] the party seeking to intervene to make a strong showing of inadequate representation." *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 293 (11th Cir. 2020) (quotation and citation omitted); *see also Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) ("[W]hen a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government.").

- 13 -

The Republican Committees admit they "seek to preserve Georgia's" Voter Suppression Bill and have an interest in "demand[ing] adherence" to it. ECF No. 6-1 at 6, 9. But this is precisely what Defendants are already required to do under the Georgia Constitution and Georgia law. The Attorney General, who has appeared in this case, *see, e.g.*, ECF No. 17, must "represent the state in all civil actions tried in any court." O.C.G.A. § 45-15-2(6). The State Election Board, further, must "formulate, adopt, and promulgate such rules and regulations, *consistent with law*, as will be conducive to the fair, legal, and orderly conduct" of elections. O.C.G.A. § 21-2-31(2) (emphasis added). The Republican Committees' desire to "preserve" the Voter Suppression Bill is adequately represented by Defendants in the exercise of their constitutional and statutory duties. ECF No. 6-1 at 9.

Because "an existing party seeks the same objectives as the would-be interveners," the Republican Committees shoulder the "burden of coming forward with some evidence to the contrary." *Clark*, 168 F.3d at 461. They have not. Aside from a brief filled with admissions that the Republican Committees' objectives overlap with those of the existing Defendants, they fail to provide *any* evidence to suggest that the Secretary of State and the State Election Board's members

inadequately represent their interests or that they will refuse to enforce or defend the bill.[1] Nor can they.

Instead, the Republican Committees make blanket characterizations of the existing Defendants that only underscore the adequacy of the Defendants' representation. For example, the Republican Committees explain that "Defendants necessarily represent the public interest," *id*. at 8, while simultaneously asserting their own interests in "ensuring that the State's election procedures are fair and reliable," *id*. at 6. At best, the Republican Committees seek to provide a "vigorous and helpful supplement" to the Defendants' argument, but that is insufficient to overcome the presumption of adequate representation, which can be accomplished through an amicus brief. ECF No. 6-1 at 9; *see also One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 398–99 (W.D. Wis. 2015) (denying Republican officeholders and candidates intervention because they "shared the same goal" as the Government Accountability Board in defending the voter ID law) (citation omitted); *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 258–59 (D.N.M. 2008) (denying Republican entities' motions to intervene in voting rights case because

---

[1] On the contrary, Georgia Attorney General Chris Carr, in fact, has vowed to "defend this law" in court. Dave Miller, *Attorney General Carr pushes back on GA voting law*, WTVM (Apr. 5, 2021), *available at* https://www.wtvm.com/2021/04/05/attorney-general-carr-pushes-back-ga-voting-law/.

party "does not assert any protectable interest that the [Secretary of State] is not already adequately protecting").

The other arguments the Republican Committees advance to show supposedly unique interests—"protecting their resources and the rights of their candidates and voters," for example, ECF No. 6-1 at 8—have been rejected time and again as inadequate to support intervention. *See, e.g.*, *Common Cause Rhode Island v. Gorbea*, No. 1:20-cv-00318-MSM-LDA, 2020 WL 4365608, at *3 n.5 (D.R.I. July 30, 2020) (rejecting state Republicans Party's rationale "to see that existing laws remained enforced" because "[t]hat is the same interest the defendant agencies are statutorily required to protect"); *Democracy N.C. v. N.C. State Bd. of Elections*, No. 20-CV457-WO-JLW, ECF No. 59 at 4 (M.D.N.C. June 30, 2020) (denying reconsideration motion after denying Republicans Committees' intervention because their alleged interest in "preserv[ing] North Carolina's voting laws" is "being adequately represented" by government defendants). Because the Republican Committees share the same interests and ultimate objectives as the existing parties, and because they have made zero effort to demonstrate the existing Defendants' inadequacy of representation, intervention as of right is inappropriate.

## II.   The Republican Committees' request for permissive intervention should be denied because intervention will unduly prejudice Plaintiffs.

While this Court has the discretion to grant permissive intervention when the movant has a defense "that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), the Republican Committees' involvement here will simply duplicate the existing Defendants' arguments and delay adjudication of the original parties' rights. Even more, the Republican Committees fail to advance any interest that will assist this Court in efficiently resolving this case. Rule 24(b)(3) requires courts to consider whether intervention will "unduly delay or prejudice the adjudication of the original parties' rights" before granting permissive intervention, and here, the Republican Committees' motion makes clear that their participation in this case will only prolong and multiply litigation proceedings.

As detailed above, *see supra* at 9–10, the Republican Committees seek to "preserve" and "demand adherence" to a law that Defendants are already defending. ECF No. 6-1 at 6, 9. Courts regularly deny permissive intervention when would-be intervenors bring nothing to the table aside from duplication of work. *See, e.g.*, *Gumm v. Jacobs*, 812 F. App'x 944, 948 (11th Cir. 2020) (holding district court properly exercised discretion in denying permissive intervention when movant was adequately represented by existing parties); *Perry*, 587 F.3d at 955 (same); *Wollschlaeger v. Farmer*, No. 11-22026-Civ-COOKE/TURNOFF, 2011 WL

13100241, at *3 (S.D. Fla. July 11, 2011) (denying permissive intervention because intervenors' inclusion would be "duplicative" and unlikely to shed any new light on the constitutional issues in this case"); *Smith v. Cobb Cnty. Bd. of Elections & Registrations*, 314 F. Supp. 2d 1274, 1313 (N.D. Ga. 2002) (denying intervention motion when movants "failed to demonstrate that their interests are not being adequately represented" and failed to show any "compelling reason" for permissive intervention).

Adding three more parties to this litigation will contribute nothing except "more issues to decide [and] more discovery requests." *South Carolina v. North Carolina*, 558 U.S. 256, 287 (2010) (Roberts, C.J., concurring in part and dissenting in part); *see also ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990) (affirming denial of permissive intervention when intervention "would severely protract litigation"). The Republican Committees do not identify any additional perspectives they would bring to the case that are different from those Defendants will raise. They only assert "a general interest in the subject matter of the litigation," which is not enough for permissive intervention. *Pinnacle Props. V, LLC*, 2011 13221046, at *3. Nor do the Republican Committees have any interest in seeking expeditious resolution of the weighty issues before this Court; they confess their interest in this case is to "preserve" Georgia's Voter Suppression Bill. *Id*. at 9.

Correspondingly, it is entirely within this Court's discretion to avoid the inevitable delays that will flow from intervention, as courts regularly do. *See, e.g.*, *Democracy N.C. v. N.C. State Bd. of Elections*, No. 20-CV457-WO-JLW, ECF No. 48 at 6 (M.D.N.C. June 24, 2020) (denying intervention of Republican Party entities and finding that "allowing [them] to intervene will result in undue prejudice on the parties and will result in 'accumulating . . . arguments without assisting the court.'" (quoting *Allen Calculators, Inc. v. Nat'l Cash Register Co.*, 322 U.S. 137, 141–42 (1944))); *Ansley v. Warren*, No. 1:16cv54, 2016 WL 3647979, at *3 (W.D.N.C. July 7, 2016) (denying timely intervention motions by Republican state legislators because "allowing the Movants to intervene . . . would needlessly prolong and complicate this litigation, including discovery, and delay the final resolution of this case"); *One Wis. Inst. Inc.*, 310 F.R.D. at 399 (denying permissive intervention to Republican officials and voters because "the nature of this case requires a higher-than-usual commitment to a swift resolution"); *Herrera*, 257 F.R.D. at 259 (denying timely intervention motions by Republican entities seeking to defend restrictive election law because "intervention is likely to lead to delays that could prejudice the Plaintiff's case and the Defendant" by increasing pleadings and discovery).

**CONCLUSION**

For these reasons, the Republican Committees' motion to intervene as of right under Rule 24(a) should be denied. Plaintiffs also request that the Court exercise its discretion to deny permissive intervention under Rule 24(b).

Respectfully submitted, this 14th day of April, 2021.

<u>**Adam M. Sparks**</u>
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN & HORST, LLC
1201 W. Peachtree St., NW
One Atlantic Center, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
jlewis@khlwafirm.com
sparks@khlawfirm.com

Uzoma Nkwonta*
Jacob Shelly*
Zachary J. Newkirk*
Jyoti Jasrasaria*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959

unkwonta@perkinscoie.com
jshelly@perkinscoie.com
znewkirk@perkinscoie.com
jjasrasaria@perkinscoie.com

Laura Hill*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-3349
Facsimile: (206) 359-4349
LHill@perkinscoie.com

*Counsel for Plaintiffs*
*Motions for Pro Hac Vice forthcoming*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| THE NEW GEORGIA PROJECT, BLACK VOTERS MATTER FUND, and RISE, INC., <br><br>           Plaintiffs, <br><br>    v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State; REBECCA SULLIVAN, in her official capacity as the Vice Chair of the Georgia State Election Board; DAVID WORLEY, in his official capacity as a member of the Georgia State Election Board; MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board; and ANH LE, in her official capacity as a member of the Georgia State Election Board, <br><br>           Defendants. | Civil Action No. <br><br> 1:21-cv-01229-JPB |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: April 14, 2021.                              **Adam M. Sparks**
                                               *Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| THE NEW GEORGIA PROJECT, BLACK VOTERS MATTER FUND, and RISE, INC.,<br><br>              Plaintiffs,<br><br>   v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State; REBECCA SULLIVAN, in her official capacity as the Vice Chair of the Georgia State Election Board; DAVID WORLEY, in his official capacity as a member of the Georgia State Election Board; MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board; and ANH LE, in her official capacity as a member of the Georgia State Election Board,<br><br>              Defendants. | Civil Action No.<br><br>1:21-cv-01229-JPB |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2021, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated: April 14, 2021.

                                                        **Adam M. Sparks**
                                                        *Counsel for Plaintiffs*