UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE NEW GEORGIA PROJECT; BLACK VOTERS MATTER FUND; and RISE, INC., <br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State; REBECCA SULLIVAN, in her official capacity as the Vice Chair of the Georgia State Election Board; DAVID WORLEY, in his official capacity as a member of the Georgia State Election Board; MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board; and ANH LE, in her official capacity as a member of the Georgia State Election Board, <br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, and GEORGIA REPUBLICAN PARTY, INC., <br> *Proposed Intervenor-Defendants*. | No. 1:21-cv-1229-JPB |

**REPLY IN SUPPORT OF
MOTION TO INTERVENE**

## INTRODUCTION

That the Republican Party—one of the two major parties in this country—should be left out of litigation over Georgia's election rules is a tough position. Republican voters vote in those elections; Republican candidates run in those elections; and the Republican Party devotes its time, resources, and energy to those elections. In the last cycle alone, over a dozen courts allowed the Republican Party to intervene in virtually identical cases. *See* Mot. (Doc. 6-1) 1-2 & n.*. That includes this Court, just a few months ago in another case involving one of these Plaintiffs. *See Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020) (Jones, J.).

Yet this tough position is the one that Plaintiffs have decided to take. If their arguments were true, then every court that recently granted the Republican Party intervention abused its discretion. But the courts were not wrong; Plaintiffs' arguments are. This Court should grant Movants' motion and allow them to participate as defendants in this important case.

## ARGUMENT

Movants satisfy the criteria for both intervention as of right under Rule 24(a)(2) and permissive intervention under Rule 24(b). Because permissive intervention is the easiest way to resolve this motion, Movants will start there.

### I. Movants should be granted permissive intervention.

Permissive intervention is warranted when the motion is "timely," the movant's defense shares "a common question of law or fact" with the main action, and intervention will not "unduly delay or prejudice the adjudication of

1

the original parties' rights." Fed. R. Civ. P. 24(b). Plaintiffs concede that the first two requirements are met. *See* Opp. (Doc. 21) 6, 17-19. But they ask this Court to deny permissive intervention on two grounds: undue prejudice (a requirement that appears in Rule 24(b)) and adequate representation (a requirement that does not). These arguments are unpersuasive, as legion courts have found in granting the Republican Party intervention. *See* Mot. 1-2 & n.*.

### A. Movants' intervention will not cause "undue" prejudice.

Plaintiffs give no specific reason why Movants' intervention would cause prejudice or delay. They instead rely on "the inevitable delays" that "flow from intervention," such as more "'arguments'" and "'discovery.'" Opp. 19. But Rule 24(b) asks about "*undu*[*e*] delay or prejudice." (Emphasis added.) "'Undue' means not normal or appropriate." *Appleton v. Comm'r*, 430 F. App'x 135, 138 (3d Cir. 2011). Though "any introduction of an intervener in a case will necessitate its being permitted to actively participate, which will inevitably cause some 'delay,'" that kind of prejudice or delay is irrelevant under Rule 24(b). *Id*. The entire point of intervention, after all, is to add parties to a case.

Movants' intervention will cause no delay or prejudice, undue or otherwise. "[T]his case is still in its infancy," with nothing on the docket other than the complaint, so "including Proposed Intervenors will not stall this litigation or unduly burden Plaintiffs." *Black Voters Matter*, *supra*, at 6. And Movants will "comply with the schedule that would be followed in their absence." *Nielsen v. DeSantis*, 2020 WL 6589656, at *1 (N.D. Fla. 2020).

2

Movants also pledge to avoid duplication in their briefs, oral arguments, and elsewhere. Nor could Movants' arguments "materially increase[] either delay or prejudice" because, as Plaintiffs concede, Movants can still raise them as *amici*. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997). And some of Plaintiffs' counterparts *want* Movants to participate in discovery. *See Ga. State Conf. of NAACP v. Raffensperger*, Doc. 27 at 3, No. 1:21-cv-1259 (N.D. Ga. Apr. 26, 2021) (stating that "Plaintiffs expect to take discovery" of Movants and would consent to their permissive intervention in order to do so). Notably, Plaintiffs point to no delay or prejudice in the many cases where the Republican Party intervened last cycle, even though those cases were litigated on an expedited basis (unlike this one). Plaintiffs should be able to do so, had any prejudice occurred, since they or their attorneys were involved in most of those cases.

Courts do not "regularly" deny the Republican Party permissive intervention. *Cf.* Opp. 19. In response to Movants' fourteen cases where the Republican Party was recently granted intervention, Mot. 1-2 & n.*, Plaintiffs found only two going the other way: *Common Cause R.I. v. Gorbea*, 2020 WL 4365608 (D.R.I. 2020); and *Democracy N.C. v. N.C. State Board of Elections*, 2020 WL 6591397 (M.D.N.C. 2020).[1]

---

[1] Plaintiffs cite other cases where courts denied intervention to *individual* voters, candidates, and officeholders—not the Republican Party itself. *See* Opp. 19. Interventions by individuals, as opposed to party organizations who represent all such individuals at once, arguably present

3

Plaintiffs' two cases illustrate why Movants' motion should be granted. *Gorbea* was largely reversed on appeal. *See* 970 F.3d 11, 17 (1st Cir. 2020) ("[A]s to the Republicans' status as intervenors in this case, the district court's order denying intervention is **reversed in part**"). And *Democracy N.C.* is a cautionary tale. That court denied the Republican Party intervention because it had already *granted* intervention to the leaders of the state senate and house, "both Republicans." 2020 WL 6591397, at *1-2. But when the court later granted a preliminary injunction, "no party … appealed." 2020 WL 6058048, at *1 (M.D.N.C. 2020). The state defendants then used that injunction as a basis to unilaterally change state election laws. *See id.* at *2-4, *8-9. This required the Republican Party to file a *separate* lawsuit, which was transferred to the *Democracy N.C.* court anyway. 2020 WL 6591367, at *1 (M.D.N.C. 2020). That series of events was anything but an efficient use of judicial or party resources. *See United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013) (holding that courts abuse their discretion if they fail to consider "the potential prejudice resulting from complete denial of intervention: significant delay … from collateral challenges" brought by the failed intervenors).

---

different concerns. *Cf. Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 259 (D.N.M. 2008) (citing the lack of a limiting principle with individuals because "[i]f [the court] lets one voter, or one legislator … intervene, it may need to let others"); *Ansley v. Warren*, 2016 WL 3647979, at *3 (W.D.N.C. 2016) (citing the difficulties of "additional government actors" purporting to speak for the state).

### B.     Adequacy is not a basis to deny Movants' intervention.

As Judge Jones explained in the last case, "Plaintiffs' argument that Proposed Intervenors have no legitimate interest that is not already adequately defended" by the state defendants bears no weight "because Rule 24(b) does not have the same inadequate representation requirements that Rule 24(a)(2) does." *Black Voters Matter*, *supra*, at 5. Rule 24(b) does not require the intervenor to have an "interest" at all, let alone an interest that the parties inadequately represent. *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996); *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 801 n.4 (7th Cir. 2019). Contrary to Plaintiffs' suggestion, Opp. 17, the Eleventh Circuit did not say otherwise in *Gumm v. Jacobs*—an unpublished decision that reviewed "only … interven[tion] as a matter of right because [the appellant had] abandoned his argument regarding permissive intervention." 812 Fed. App'x 944, 946 (11th Cir. 2020). Instead, courts grant permissive intervention even when the movant is "completely and adequately represented," will merely "enhance[]" the government's defense, or will provide a "secondary voice in the action." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005); *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 286 (D.D.C. 2014); *Alabama v. U.S. Dep't of Commerce*, 2018 WL 6570879, at *3 (N.D. Ala. 2018).

Using adequate representation to deny permissive intervention would be particularly inappropriate here. As explained, Movants have concrete interests at stake that Defendants do not adequately represent. *See infra* II; Mot. 5-9.

5

At the very least, these questions are so close that they should not drive the Court's analysis.

Plaintiffs' insistence that Movants lack "any interest" in "the weighty issues before this Court" and "bring nothing to the table" is unpersuasive. Opp. 17-18. The state and national Republican parties "are not marginally affected individuals; they are substantial organizations with experienced attorneys who might well bring perspective that others miss or choose not to provide." *Nielsen*, 2020 WL 6589656, at *1. With respect, Movants have at least as much at stake in Georgia's elections and at least as much expertise on the relevant issues as Plaintiffs or Defendants. The Republican Party has litigated these same constitutional and statutory issues in many cases across the country. Just last month, for example, the Party defeated a constitutional challenge to a Minnesota law on legal grounds that the secretary of state would not advance. *See League of Women Voters of Minn. Educ. Fund v. Simon*, 2021 WL 1175234 & n.1 (D. Minn. 2021). Allowing Movants to intervene here would similarly serve "'the interest of a full exposition of the issues.'" *South Carolina v. North Carolina*, 558 U.S. 256, 272 (2010).

Plaintiffs' observation that this case is one of "five lawsuits" brought by "18 different plaintiffs" only proves Movants' point. Opp. 1-2. Plaintiffs seem to assume that these five[2] cases will be consolidated. If that's right, then

---

[2] Apparently, two more cases are on their way. *See* Niesse & Prabhu, *Lawsuit Alleges Georgia Voting Law Discriminates Against Black Voters*, Atlanta J.-Const. (Apr. 27, 2021), bit.ly/3gKAPAz; Umontuen, *Fulton County Commissioners Vote to Challenge Georgia's New Election Law*, Atlanta Voice (Apr. 15, 2021), bit.ly/3sZrGGE.

6

duplication, complexity, and overlapping discovery are inevitable. The paramount concern when deciding this motion should not be avoiding marginal differences in "judicial efficiency," but deciding these "significant … constitutional issues" on "a fully developed factual record and briefing." *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 115 (1st Cir. 1999) (Lynch, J., concurring).

The "rationale for intervention" has "particular force" here because "the subject matter of the lawsuit is of great public interest," Movants have "a real stake in the outcome," and their "intervention may well assist the court in its decision." *Id.* at 116; *accord Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1479 (11th Cir. 1993) ("The substantial public interest at stake in the case is an unusual circumstance militating in favor of intervention."). Plaintiffs' apparent belief that over a dozen organizations can participate in litigation over Georgia's election rules—but one of the two major political parties cannot—is untenable. Permissive intervention is an easy call.

## II. Movants are entitled to intervene as of right.

Alternatively, this Court should grant intervention as of right. That form of intervention requires timeliness, an interest, impairment, and inadequate representation. Fed. R. Civ. P. 24(a)(2). Prejudice to the parties is not a factor. *Clark v. Putnam Cty.*, 168 F.3d 458, 462 (11th Cir. 1999). Plaintiffs concede timeliness but dispute the other criteria. Their arguments are neither persuasive nor consistent with the overriding principle that "'Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor.'"

7

*Adams Offshore, Ltd. v. Con-Dive, LLC*, 2009 WL 2971103, at *1 (S.D. Ala. 2009); *accord Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action.").

### A.   Movants have substantial interests at stake.

Movants want Republican voters to vote, Republican candidates to win, and Republican resources to be spent wisely and not wasted on diversions. *See* Mot. 5-6. These interests "are routinely found to constitute significant protectable interests" under Rule 24. *Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. 2020). Most plaintiffs don't bother disputing them. *See Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. 2014); *Ohio Democratic Party*, 2005 WL 8162665, *2. Plaintiffs do, but they fail to cite a single case where a court said the Republican Party lacked an interest in maintaining electoral safeguards.[3]

This litigation "may" impair Movants' interests. Fed. R. Civ. P. 24(a)(2). The Georgia legislature enacted SB 202 to "streamline the process of conducting elections in Georgia," promote "uniformity in voting," and address

---

[3] Plaintiffs note that some of Movants' cases discuss Article III standing, not the "interest" requirement of Rule 24. *See* Opp. 9-10. But, as the Democratic Party has pointed out, these cases are instructive because "Article III standing … goes *beyond* the requirement needed for intervention under Rule 24(a)(2)." *Ga. Republican Party v. Raffensperger*, Doc. 29 at 7-8, No. 2:20-cv-135 (S.D. Ga. Dec. 18, 2020) (emphasis added). Per the Eleventh Circuit, "a movant who shows standing is deemed to have a sufficiently substantial interest to intervene." *Meek*, 985 F.2d at 1480.

8

a recent loss of "elector confidence in the election system." 2021 Georgia Laws Act 9 (S.B. 202, §2). If Plaintiffs convince this Court to strike down SB 202, the legislature's goals will be frustrated. The resulting loss of confidence may make it less likely that Movants' voters will vote and that Movants' candidates will win. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008) (opinion of Stevens, J.); *Black Voters Matter*, *supra*, at 5. And because Plaintiffs' challenge only some aspects of SB 202, the resulting mishmash of election rules may require Movants to divert finite resources to educating their voters and retooling their campaigns. *See* Mot. 5-7.[4]

These concerns are magnified by the likelihood that such an order would come shortly before the 2022 election. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). While SB 202 itself changed Georgia's election laws, *see* Opp. 12, those changes were democratically enacted—not imposed by federal courts. *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020). Voters, candidates, campaigns, and election officials will be diligently studying and implementing SB 202 while this case is litigated and appealed. *See Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). The whiplash from a

---

[4] Contrary to Plaintiffs' assertion, Opp. 10, these sorts of resource diversions do qualify as "interests" under Rule 24. *See Issa*, 2020 WL 3074351, at *3; *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5658703, at *11 (S.D.N.Y. 2020). These direct harms are not the kind of "indirect impact" on a movant's general "economic interest" that the Eleventh Circuit was discussing in *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1251 (11th Cir. 2002).

9

"conflicting" court order, particularly as the election "draws closer," could only "result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5.

Plaintiffs' suggestion that Movants' interests are "generalized" and "shared by *all* Georgians" is neither true nor relevant. Opp. 8. Not "all Georgians" have an interest in electing *Republicans* or conserving the resources of the *Republican Party*. As the Democratic Party has explained, Movants "have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither Defendants nor any other party in this lawsuit share." *Wood v. Raffensperger*, Doc. 13 at 16, No. 1:20-cv-5155-TCB (N.D. Ga. Dec. 21, 2020). Further, Plaintiffs incorrectly assume that Movants' interests in this case must be "unique." *Citizens United*, 2014 WL 4549001, at *2 n.1. Rule 24(a)(2) requires "an interest that is *independent of* an existing party's, not *different from* an existing party's." *Planned Parenthood*, 942 F.3d at 806 (Sykes, J., concurring); *accord id.* at 798 (majority op.). If voter participation and resource diversion are not too generalized to give Plaintiffs standing, Compl. (Doc. 1) ¶¶13-19, then they are not too generalized to justify Movants' intervention. *See Meek*, 985 F.2d at 1480.

Plaintiffs' remaining arguments are misguided because they assume that Plaintiffs, not Movants, are correct about the merits of this case. When resolving a motion to intervene, courts cannot "assume … that Plaintiffs will ultimately prevail on the merits" or prejudge "the ultimate merits of the claims

10

which the intervenor wishes to assert." *Pavek v. Simon*, 2020 WL 3960252, at *3 (D. Minn. July 12, 2020); *SEC v. Price*, 2014 WL 11858151, at *2 (N.D. Ga. 2014). Thus, the question is not whether Movants have an interest in maintaining "'unconstitutional'" laws that "suppress[]" votes. Opp. 10. The question is whether Movants have an interest in preventing a federal court from usurping legislative power and enjoining a *valid* law that *increases* voter confidence and *promotes* voting. *See Clark*, 168 F.3d at 462. They do.

### B. Movants' interests are not adequately represented.

Plaintiffs obsess over one sentence of Movants' brief where Movants said they hope to "preserve" SB 202—a goal that Plaintiffs note is likely shared by Defendants. *See* Opp. 2, 5, 7, 12, 14, 17, 18 (quoting Mot. 9). But the fact that Movants and Defendants "both believe [Plaintiffs' relief] should be denied … does not mean that [they] have identical positions or interests." *U.S. Army Corps*, 302 F.3d at 1259. Plaintiffs cite *Stone v. First Union Corp.* for the proposition that adequate representation is presumed when "an existing party seeks the same objectives as the proposed interveners," Opp. 12, but Plaintiffs omit the Eleventh Circuit's holding: "This presumption is weak and can be overcome if the [movants] present some evidence to the contrary"—for example, a "difference in interests." 371 F.3d 1305, 1311-12 (11th Cir. 2004). The required showing is "'minimal'" and "not difficult." *Clark*, 168 F.3d at 461. Movants should be granted intervention "'unless it is clear that [the governmental defendants] will provide adequate representation.'" *Chiles v.*

11

*Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). Adequacy is not clear here for several reasons.

First, Defendants take no position on Movants' intervention. *See* NRCC Joinder (Doc. 18). As many courts have stressed, the government's "silence on any intent to defend [the movant's] special interests is deafening." *Conservation Law Found. of N.E., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *accord Utahns for Better Transp. v. DOT*, 295 F.3d 1111, 1117 (10th Cir. 2002) (same). Because the State "nowhere argues . . . that it will adequately protect [Movants'] interests," Movants "have raised sufficient doubt concerning the adequacy of [its] representation." *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. 2017).

Second, as state actors, Defendants' interests inherently clash with Movants'. *See* Mot. 8-9. To quote the Democratic Party again, inadequacy is a "'light'" burden here because Defendants' "'views are necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it.'" *Ga. Republican Party*, *supra*, at 9-10 (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998)). In other words, Defendants necessarily "represent interests adverse to [Movants]" because they also represent "the plaintiffs." *Clark*, 168 F.3d at 461. Their concern with all Georgians, as well as the public "coffers" and their own reelection, makes Defendants less likely to make the same arguments, less likely to exhaust all appellate options, and more likely to settle. *Id.* at 461-62; *see, e.g., Democratic Party of Ga. v. Raffensperger*, Doc. 56, No. 1:19-cv-5028

(N.D. Ga. Mar. 6, 2020) (settlement agreement between Defendants and the Democratic Party that modified Georgia election law). This "divergence of interest" is "sufficient" to "entitle [Movants] to intervene." *Clark*, 168 F.3d at 461.

Lastly, Movants and Defendants have a "difference of interests" in this case. *Stone*, 371 F.3d at 1312. Defendants are concerned with "properly administer[ing Georgia's] election laws," while Movants "are concerned with ensuring their party members and the voters they represent have the opportunity to vote," "advancing their overall electoral prospects," and "allocating their limited resources to inform voters about the election procedures." *Issa*, 2020 WL 3074351, at *3. Even if "similar," these interests are not "identical"—a deviation that might inspire different "approaches to [this] litigation." *Chiles*, 865 F.2d at 1214. "[T]his possibility sufficiently demonstrates that [Movants'] interests are not adequately represented." *Id.* at 1215.

## CONCLUSION

The Court should grant Movants leave to intervene as defendants.

Dated: April 28, 2021					Respectfully submitted,

							*/s/ Cameron T. Norris*

John E. Hall, Jr. (GA Bar No. 319090)		Tyler R. Green (*pro hac vice*)
William Bradley Carver, Sr. (GA Bar No. 115529)	Cameron T. Norris (*pro hac vice*)
W. Dowdy White (GA Bar No. 320879)		**CONSOVOY MCCARTHY PLLC**
**HALL BOOTH SMITH, P.C.**				1600 Wilson Boulevard
191 Peachtree Street NE				Suite 700
Suite 2900						Arlington, VA 22209
Atlanta, GA 30303					(703) 243-9423
(404) 954-6967					tyler@consovoymccarthy.com
							cam@consovoymccarthy.com

*Counsel for Proposed Intervenor-Defendants*

## CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

This reply was prepared in Century Schoolbook, 13-point type—one of the font and point selections approved in Local Rule 5.1(C). I certify that I electronically filed this reply with the Clerk of Court using CM/ECF, which will electronically notify all counsel of record.

Dated: April 28, 2021                    */s/ Cameron T. Norris*