IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE NEW GEORGIA PROJECT, BLACK VOTERS MATTER FUND and RISE, INC. | : : : : | CIVIL ACTION FILE NO.: |
| Plaintiffs, | : : | 1:21-cv-01229-JPB |
| vs. | : : | |
| BRAD RAFFENSPERGER in his official capacity as the Georgia Secretary of State, et al., | : : : : | |
| Defendants. | : : | |

**BRIEF IN SUPPORT OF BROOKS COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**I.  INTRODUCTION**

Plaintiffs in this action, upset with the Georgia Legislature for enacting changes to Georgia election law in Senate Bill 202 ("SB 202") and with Secretary of State Brad Raffensperger for enforcing and defending the law, have arbitrarily selected and named as defendants the election and registration boards for Brooks, Dougherty, Fulton, and Spalding Counties - just four of the 159 counties in Georgia ("County Defendants"). However, the county election boards have no authority regarding the enactment of voting legislation in the State of Georgia, nor do they have any discretion over whether to follow the laws passed by the Legislature.

In Plaintiffs' original Complaint [Doc. 1] they properly limited their lawsuit to the Secretary of State and the State Election Board, ("State Defendants") as the State parties responsible for the enforcement of the provisions of SB 202. However, in their Amended Complaints, the organizational Plaintiffs have sought out and added individual Plaintiffs in an effort to gain jurisdiction over an arbitrarily selected set of county defendants. This effort by Plaintiffs to add County Defendants who had no role in the passage of the bill and are not necessary parties is likely a result of a misguided application of the recent ruling in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245-46 (11th Cir. 2020).

*Jacobson*, dealing with the standing of voters to challenge Florida's ballot order provision, reiterated the test from *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992), that "[t]he litigant must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision" and held that the plaintiff in that case could not show standing because the sole defendant, the Florida Secretary of State, had no authority to implement the relief that the plaintiffs requested (changing the ballot order).

Nowhere in the Amended Complaint have Plaintiffs demonstrated an injury-in-fact, much less one that is fairly traceable to the actions of the County Defendants.

2

They simply do not have standing to assert their claims against the counties and cannot achieve it by skipping straight to the third prong of the *Lujan* test. Likewise, the only alleged Brooks County resident,[1] Fannie Mae Gibbs, cannot demonstrate injury-in-fact simply by stating SB 202 will create generalized inconveniences that will apply to voters statewide.  Further, even if the Court were inclined to give some latitude regarding the injury-in-fact and traceability factors, organizational Plaintiffs cannot rationally explain how seeking relief against less than three percent of the total counties in the State of Georgia would redress their purported injuries.

Even construing the lengthy recitation of facts in the light most favorable to Plaintiffs, no amount of leeway can overcome the jurisdictional obstacle of lack of prudential standing.  Accordingly, this Court does not have jurisdiction over the claims asserted against the County Defendants, and the Brooks County Defendants therefore request that the Court dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

---

[1] The Amended Complaint alleges that Ms. Gibbs is registered to vote in Brooks County.  However, in the very next sentence it indicates that she resides in Valdosta, Georgia, which is located in Lowndes County, drawing into question whether she is even eligible to vote in Brooks County or whether any Plaintiff has a direct connection to Brooks County.

3

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A.  Standards for Motion to Dismiss

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id*. "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id*.

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321—22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

### B. Plaintiffs lack standing to bring claims against the County Defendants

"Article III of the Constitution limits federal courts to adjudicating actual 'cases' and 'controversies.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019); U.S. Const. art. III, § 2.  "To have a case or controversy, a litigant must establish that he has standing," which requires proof of three elements. *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, (2000). "The plaintiff bears the burden of establishing each element." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019).

"It is not enough that [plaintiff] sets forth facts from which [the court] could imagine an injury sufficient to satisfy Article III's standing requirements." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005). Instead, "plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy Art. III

standing requirements." *Id*. "If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Id*.

Further, "when plaintiffs seek prospective relief to prevent future injuries, they must prove that their threatened injuries are "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013).

### i.  Plaintiffs have not demonstrated an injury-in-fact

Injury-in-fact is "the first and foremost of standing's three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, (2016). To prove an injury-in-fact the Plaintiffs must show "a concrete and particularized injury." *Sierra v. City of Hallandale Beach*, 996 F.3d 1110 (11th Cir. 2021), citing to *Lujan*, 504 US at 560 n.1. "An injury is particularized when it affect[s] the plaintiff in a personal and individual way. To be concrete, the injury must be real, and not abstract." *Id*., (citing to *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotes omitted)).

In the Amended Complaint, Plaintiffs' claims of injury are based upon a highly speculative narrative concerning actions they might have to take or resources they may expend at some point in the future due to the actions of the State Defendants in passing SB 202. However, in a case such as this one, "[w]hen a plaintiff seeks prospective relief to prevent a future injury, it must establish that the threatened injury is certainly impending." *Indep. Party of Fla. v. Sec'y, State of Fla.*,

967 F.3d 1277, 1280 (11th Cir. 2020). "[A]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. Nor is a "realistic threat," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499-500 (2009), an "objectively reasonable likelihood" of harm, *Clapper*, 568 U.S. at 410.

Despite this requirement of a concrete actual or imminent injury, Plaintiffs raise only generalized fears about how their members will be impacted or vague references to what they may have to do in response to the provisions of SB 202 at some uncertain future time. For instance, Plaintiff New Georgia Project ["NGP"] makes broad, generalized claims that it has "members and constituents across Georgia, whose right to vote will be burdened or denied as a result of the [SB 202]" without explaining how or by which provisions its members will be burdened. [Doc. 39, ¶ 20]. Similarly, Plaintiff Rise, Inc. ["Rise"] claims SB 202 harms its organization "by making it more difficult for Georgia students who have joined the Rise movement to vote" without pinpointing any specific burdens or threatened harms. [Doc. 39, ¶ 24]. Ignoring, for the moment, that Plaintiffs haven't demonstrated how these hypothetical injuries would be attributable to County Defendants, they haven't even plead with enough specificity to demonstrate an "objectively reasonable likelihood of harm." *Clapper*, 568 U.S. at 410.

Plaintiffs are careful to use affirmative language in the Amended Complaint instead of conditional terms, asserting that hypothetical future events "will" happen or that resources "must" be diverted. Despite this strategic use of overly confident language, the reality is that Plaintiffs are still describing hypothetical future events, and the Amended Complaint does not plead any concrete past injury, nor have they made a case for the imminent threat of a particularized injury. Rather, Plaintiffs take turns in the Amended Complaint projecting general changes to budgeting priorities, shuffling of resources, or other steps they think will confer standing upon them.

Indeed, Plaintiffs each make broad claims that they will have to divert resources from one area of their operation into efforts to address SB 202. To be sure, when a Plaintiff claims diversion of resources as an injury, it must demonstrate that "a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Sec'y of Fla.*, 772 F.3d 1335, 1341 (11th Cir. 2014). But Plaintiffs are responsible for proving they "would in fact be diverting . . . resources away from their core activities." *Ga. Ass'n of Latino Elected Officials, Inc. v. Gwinnett Cty. Bd. of Reg. & Elections*, Case No. 1:20-CV-01587, 2020 U.S. Dist. LEXIS 211736, at *4 (N.D. Ga. Oct. 5, 2020) ("GALEO"). Organizations cannot support a claim of standing "based solely on the baseline work they are already doing." *Common Cause Ind. v.*

*Lawson*, 937 F.3d 944, 955 (7th Cir. 2019). Plaintiff organizations "cannot convert ordinary program costs into an injury in fact. The question is what additional or new burdens are created by the law the organization is challenging. It must show that the disruption is real and its response is warranted." *Id*.

Plaintiffs make various claims that they will have to divert unspecified resources or undetermined amounts of money on efforts to address problems that may be caused by SB 202 at some point in the future. But invariably those efforts already fall within the core mission of the organization. For instance, NGP states that it is "dedicated to…helping [Georgia voters] become more civically engaged through voter education…" [Doc. 39, ¶ 17], but later claims it will be harmed by having to devote resources to educate voters about new election law provisions – a form of civic engagement it already participates in. [Doc. 39, ¶ 20]. Likewise, Rise notes that its "student volunteers engage in grassroots voter registration, education, and turnout activities…" [Doc. 39, ¶ 23]. Yet it then asserts in the next paragraph that it will have to "divert resources" to "implement effective voter education and mobilization efforts". [Doc. 39, ¶ 24] Nowhere in the Amended Complaint do any of the Plaintiff organizations explain why including information about new voting legislation would not fall under their normal educational and mobilization efforts. Such claims by Plaintiff organizations that they may have to use their resources to

participate in their already existing missions is no more than a thinly veiled effort "to convert ordinary program costs into an injury in fact" and cannot be the basis for a showing of injury-in-fact. *Common Cause Ind.*, *supra*, 937 F.3d at 955.

With respect to the individual Plaintiffs, their alleged injuries arise out of their choices about which method of voting to use.[2] Their voting method preferences, however, cannot establish an injury-in-fact for standing purposes. Plaintiffs will not "suffer [an] injury in the future" simply because their preferred method is more inconvenient, as they will still have multiple options to vote. *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014). Put simply, no legal requirement forces voters to vote absentee or in-person. Voters have more options now than they've ever had for casting their ballot, including: absentee voting by mail, absentee voting by drop box, voting in-person during the advance voting period, or voting in-person on election day. Under these circumstances, Plaintiffs have shown neither a concrete injury nor an imminently threatened one.

---

[2] Ms. Gibbs is the only plaintiff that claims any connection whatsoever to Brooks County, yet nowhere in Paragraph ¶ 28, nor anywhere else in the Amended Complaint, is there any particularized injury described. Rather she merely sets forth inconveniences that would be no different from what any voter in Georgia would have to face under the new legislation. Neither does the Amended Complaint explain how the claimed burdens are attributable to the actions of the Brooks County Defendants.

### ii. Plaintiffs have not shown an injury fairly traceable to the County Defendants

To establish standing, in addition to demonstrating an injury-in-fact, Plaintiffs must also show a "causal connection between [their] injury and the challenged action of the defendant—i.e., the injury must be fairly…trace[able] to the defendant's conduct..." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (internal quotes removed). The crux of Plaintiffs' lawsuit is that "the General Assembly voted to pass sweeping omnibus legislation…that is clearly intended to and will have the effect of making it harder for lawful Georgia voters to participate in the State's elections." [Doc. 39, ¶ 4]. Yet nowhere in the Amended Complaint do Plaintiffs bother to explain how their supposed injuries are traceable to the County Defendants.

Indeed, Plaintiffs devote 13 pages of the Amended Complaint detailing alleged deficiencies with the process of passing SB 202 [Doc. 39, pp. 40-53] and 11 pages describing why the legislation crafted by the General Assembly is deficient and burdensome [Doc. 39, pp.29-40]. Nowhere do the Plaintiffs allege or demonstrate a causal connection between the harms created by legislation they seek to overturn and the conduct of the County Defendants. At most the Amended Complaint sets forth broad categories of voting responsibilities that fall upon election superintendents throughout Georgia, but it is not until the Prayer for Relief

at the very end of the Amended Complaint that the Plaintiffs even directly address the role of the County Defendants, when they ask the Court to enjoin the Defendants generally from enforcing the provisions of SB 202 or conducting elections using those provisions.

There is little doubt that Plaintiffs felt compelled to include the County Defendants due to the opinion of the 11th Circuit in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245-46 (11th Cir. 2020). In that case, the Court ruled that the District Court should have dismissed an action brought by several Democratic voters and organizations challenging to the Florida statute setting the order of candidates' names on the ballot. Among the reasons for its ruling, the Court said that the plaintiffs failed to demonstrate organizational standing to seek relief against the Florida Secretary of State because her office does not enforce the ballot order provision, noting that only the 67 county Election Supervisors are responsible for preparing the ballots. *Id* at 1253.

The result of that ruling has been that some subset of county election officials has been named in most election suits filed in the 11th Circuit since then, including at least three other suits currently pending before this Court: *Georgia State Conference of the NAACP et al. v. Raffensperger et al.*, Case No. 1:21-cv-01259-JPB; *Sixth District of the African Methodist Episcopal Church et al v. Brian Kemp*

*et al*, Case No: 1:21-cv-1284-JPB; *Asian Americans Advancing Justice-Atlanta, et al. v. Raffensperger et al.*, Case No. 1:21-cv-01333-JPB.

However, simply locating a handful of individual plaintiffs in order to name an arbitrary set of county election officials as defendants does not meet the Plaintiff's burden to demonstrate traceability and redressability. "It is the plaintiff's burden to plead and prove…causation…" *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011). *See also*, *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000) ("The party invoking federal jurisdiction bears the burden of proving standing"). "Article III standing requires that the plaintiff's injury be 'fairly traceable' to the defendant's actions and redressable by relief against *that* defendant." *Jacobson,* 974 F.3d 1236, at 1256, citing to *Lewis*, 944 F.3d at 1298, 1301.

The Amended Complaint is bereft of any factual allegations tying Plaintiffs' alleged future injuries to the County Defendants. Aside from noting where the individual Plaintiffs are registered to vote, the Amended Complaint does not even attempt to explain why the particular counties named were chosen, much less how those counties are responsible for the passage or enforcement of the provisions of SB 202. Accordingly, because Plaintiffs have failed to clearly articulate in their Amended Complaint how their claimed injuries are traceable to and redressable by

the County Defendants, they have not carried their burden of demonstrating standing to sue the counties.

### iii. Plaintiffs have not demonstrated how relief could be afforded by enjoining the four County Defendants

Plaintiffs have failed to show how an order enjoining four sets of County Defendants from enforcing the provisions of SB 202 will redress their alleged injuries when, applying Plaintiff's apparent interpretation of *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245-46 (11th Cir. 2020), 148 other Georgia counties would not be subject to the Court's order.

While Plaintiffs named four county boards of registrations as defendants (and two elected law enforcement officials in Fulton County) in the Amended Complaint challenging multiple sections of SB 202. [Doc. 39 ¶ 33 -38], none of the organizational Plaintiffs describe themselves, their members, or their activities as limited to the counties served by the four county election boards named as Defendants.  To the contrary, Plaintiffs NGP, Black Voters Matter and Rise, Inc. each asserts that it operates "statewide." [Doc. 39 ¶¶ 17, 21, 23]. Presumably, the Plaintiffs would be concerned with the alleged impact of SB 202 on the voters they serve beyond the four counties and would seek to prevent its enforcement beyond the jurisdiction of the four county boards named herein.

Yet Plaintiffs have chosen not to seek statewide relief against all county election officials, apparently hoping that an order against a small subset of counties will somehow bind the rest of the county election officials. In *Jacobson* the Court noted that a declaratory judgment or injunction against the Secretary of State would not have bound the County Supervisors, who were not parties to the action. *Jacobson*, 974 F.3d 1236, at 1256. at 1302. Similarly, the election officials in 155 other Georgia counties are not parties to this action and, therefore, would not be "obliged…in any binding sense…to honor an incidental legal determination [this] suit produce[s]." *Id*. "[I]t must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury. Any persuasive effect a judicial order might have upon the [other county election officials], as absent nonparties…cannot suffice to establish redressability." *Id*. at 1254. And see, *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) ("If courts may simply assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees, then redressability will always exist."

Plaintiffs' failure to sue the parties that can redress the alleged harm could also lead to "arbitrary and disparate treatment to voters in its different counties," *Bush v. Gore*, 531 U.S. 98, 107, 121 S. Ct. 525, 531 (2000), with four counties bound

by an order from this Court and the remaining 155 counties following existing law. *See also Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1381 (S.D. Fla. 2004) (error not to join other county election officials). In other words, granting Plaintiffs the relief they seek would lead to different rules for elections in different parts of the state, based solely on Plaintiffs' choice over which counties to sue in this particular case. Thus, Plaintiffs undermine their own claims of imminent "injury," "redress," or "equal protection" by leaving out the other counties which would prolong any uniform implementation or enforcement of any order issued by this Court.

### III.  CONCLUSION

Plaintiffs have the burden to clearly plead and prove the basic elements of standing in order to bring claims against the County Defendants in this matter. *Bochese*, *supra* 405 F.3d at 976.  Plaintiffs have not met that burden in their Amended Complaint, even construing the facts alleged by them in their favor.

Plaintiffs have not alleged that actions traceable to the County Defendants have or will imminently cause a concrete injury. Further, even though Plaintiffs appear to have named County Defendants for purposes of redressability under an improper interpretation of the 11th Circuit Court of Appeals ruling in *Jacobson v. Fla. Secy. of State*, they have failed to demonstrate how their claimed injuries would be redressed by an order enjoining only 4 arbitrarily selected counties out of 159

total counties in the state. Such an order would produce two separate sets of rules for elections in Georgia, resulting in non-uniform application of the elections laws within the State, creating an even larger problem than those Plaintiffs seek to address in their Amended Complaint.

Accordingly, and for all the reasons set forth above, County Defendants request that the Court enter an order dismissing all claims against them in Plaintiffs' First Amended Complaint.

Respectfully submitted this 13th day of July, 2021.

CHARLES DAVE, in his official capacity as the Director of the Brooks County Elections Department; ZURICH DESHAZIOR, DON DISTEFANO, and KAREN MURRAY, in their official capacities as members of the BROOKS COUNTY BOARD OF ELECTIONS (collectively, the "Brooks County Defendants")

BY:     **HAYNIE, LITCHFIELD & WHITE, PC**

/s/ *Daniel W. White*
DANIEL W. WHITE
Georgia Bar No. 153033
Haynie, Litchfield & White, PC
222 Washington Avenue
Marietta, GA  30060
(770) 422-8900
dwhite@hlw-law.com
*Attorneys for Brooks County Defendants*

# CERTIFICATE OF COMPLAINCE WITH LOCAL RULE 7.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

                                       /s/ *Daniel W. White*
                                       DANIEL W. WHITE
                                       Georgia Bar No. 153033
                                       *Attorney for Cobb County Defendants*

HAYNIE, LITCHFIELD & WHITE, PC
222 Washington Avenue
Marietta, GA  30060
(770) 422-8900
dwhite@hlw-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2021, I electronically filed the foregoing BRIEF IN SUPPORT OF BROOKS COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record in this matter.

/s/ *Daniel W. White*
DANIEL W. WHITE
Georgia Bar No. 153033
*Attorney for Brooks County Defendants*

HAYNIE, LITCHFIELD & WHITE, PC
222 Washington Avenue
Marietta, GA  30060
(770) 422-8900
dwhite@hlw-law.com